UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALRELIO EVANS #367619,

    Plaintiff,

v.                                                        Case No.  2:17-cv-00046

                                                           Hon. Robert J. Jonker

THOMAS PRISK, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

        This is a civil rights action brought by state prisoner Alrelio Evans pursuant to 42 U.S.C. § 1983.  Plaintiff is currently confined in the Chippewa Correctional Facility in Kincheloe, Michigan.  Plaintiff alleges that when he was confined in the Marquette Branch Prison (MBP), in Marquette, Michigan, Defendants Warden Robert Napel and Chaplin Thomas Prisk denied him Jehovah's Witness group services.  Plaintiff asserts claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA) and the First Amendment for violating his rights to exercise his religious beliefs and the Fourteenth Amendment for violating his equal protection rights by allowing other religions to have group services with less than five prisoners in attendance.  Plaintiff also asserts that Defendants conspired to deprive him of his rights.  Plaintiff requests injunctive and declaratory relief, compensatory, punitive, and nominal damages.  Defendants filed a motion for summary judgment (ECF No. 95).  Plaintiff filed a response (ECF No. 102).

1

Defendant Prisk responded to Plaintiff's request for religious services in a memorandum dated October 6, 2016:

> Your request to attend a Jehovah Witness service has been received and you have been placed on a waiting list. Currently, there is not enough interest in attending such a service from prisoners who have listed their religious preference as Jehovah Witness to seek time and space for this service. When sufficient prisoner interest is established, I will confer with the administration regarding when a service might be scheduled. Watch for the call-out on your itinerary.

(Michigan Department of Corrections Memorandum, ECF No. 1-8, PageID.88). Defendants refused Plaintiff's immediate request for group services because there were less than five members of Jehovah's Witnesses at MBP that had requested group service. Policy Directive 05.03.150(V) provides in part:

> Group religious services shall be offered at all institutions for prisoners belonging to a recognized religious group. Except as set forth in Attachment A, each group shall be allowed a weekly religious service if resources permit. However, a service is not required to be conducted if there are less than five prisoners within the same security level of that institution who actively participate in the religious activities of a group.

(ECF No. 95-3, PageID.563). Plaintiff argues that this policy is unconstitutional under the First Amendment and Fourteenth Amendment, and violates RLUIPA. Alternatively, Plaintiff states that a question of fact exists regarding whether there were more than five prisoners within the same security level as Plaintiff who requested group Jehovah's Witness services at MBP. Defendants argue that Plaintiff's RLUIPA claim fails and that they are entitled to qualified immunity from liability because there was no violation of clearly established law.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants argue that Plaintiff may not obtain injunctive relief or monetary damages under RLUIPA.  Plaintiff was transferred from MBP on October 3, 2017, and is now housed at the Chippewa Correctional Facility.  Plaintiff requests that MBP provide Jehovah's Witness group services because he believes that he could be transferred back to MBP after this

3

litigation ends.  The Sixth Circuit determined that when a prisoner is seeking a declaratory judgment against a prison where he is no longer housed, the prisoner's claims against *that institution* have become moot.  *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).  *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (holding a Michigan prisoner's request for declaratory and injunctive relief was moot after he was transferred to another prison facility because the prisoner directed his request for relief specifically at the policies of the facility housing him previously, not at an MDOC policy).

Underlying the court's brief determination is the constitutional and statutory requirement that federal courts only adjudicate cases of "actual controversy."  U.S. Const. art. III, § 2, cl. 1; 28 U.S.C. § 2201.  According to the Supreme Court, the question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality to warrant the issuance of a declaratory judgment*."  *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  When considering the mootness of a request for declaratory judgment, the Court has considered factors such as whether there was a "mere voluntary cessation of allegedly illegal conduct," whether the defendant was left "free to return to his old ways," or whether there was a "reasonable expectation that the wrong will be repeated."  *Preiser*, 422 U.S. at 402.

Plaintiff has not attacked the constitutionality of the Policy Directive 05.03.150 as applied throughout the MDOC, but only as applied by Defendants Napel and Prisk at MBP. (Plaintiff's deposition, ECF No. 95-2, PageID.554).  Plaintiff's claim that he will be denied group services if is he transferred to MBP in the future is speculative and not "ripe" for adjudication at

4

this time because the legal conflict contemplated by Plaintiff is too remote to be an "actual controversy" under Art. III of the constitution or 28 U.S.C. § 2201. *See Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (holding that "[a]llegations of possible future injury do not satisfy the requirements of Art. III" of the constitution and that a "threatened injury must be 'certainly impending' to constitute injury in fact"), *Sankyo Corp. v. Nakamura Trading Corp.*, 139 F. App'x 648, 651-52 (6th Cir. 2005), and *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville &Davidson Cty., Tenn.*, 274 F.3d 377, 399 (6th Cir. 2001) (explaining that the doctrine of ripeness "exists to ensure that courts decide only existing, substantial controversies, *not hypothetical questions or possibilities*" (internal quotation marks omitted, emphasis added)). In the opinion of the undersigned, Plaintiff's assertion that he will be denied group services if returned to MBP is too speculative to warrant injunctive relief.[1]

In addition, the Sixth Circuit held that RLUIPA does not allow for money damage claims against prison officials in their official capacity. *Haight v. Thompson*, 763 F. 3d 554, 570 (6th Cir. 2014). Nor does RLUIPA provide for damages against state employees in their individual capacities. *See Washington v. Gonyea*, 731 F. 3d 143, 145 (2nd Cir. 2013); *Stewart v. Beach*, 701 F. 3d 1322, 1334-35 (10th Cir. 2012); *Sharp v. Johnson*, 669 F. 3d 144, 154-55 (3rd Cir. 2012); *Sossamon v. Lone Star State of Tex.*, 560 F. 3d 316, 327-28 & n. 23 (5th Cir. 2009); *Nelson v. Miller*, 570 F. 3d 868, 889 (7th Cir. 2009); *Smith v. Allen*, 502 F. 3d 1255, 1272-75 (11th Cir. 2007). This Court has repeatedly held that RLUIPA does not provide a cause of action for damages against state actors in their individual capacities. *See, e.g. Green v. Tudor*, 685 F. Supp. 2d 678, 699 (W.D. Mich. 2010); *Wood v. Mich. Dep't of Corrs.*, No. 1:12-cv-1342, 2013 U.S. Dist. LEXIS

---

[1] The Court denied Plaintiff's motion for injunctive relief. (ECF No. 101) The Sixth Circuit denied Plaintiff's appeal because his request was moot due to his transfer from MBP. (ECF. No. 105).

79310, 2013 WL 2458390 (W. D. Mich. June 6, 2013); *Crump v. Prelesnik*, No. 1:10-cv-353, 2013 U.S. Dist. LEXIS 45126, 2013 WL 1337790, at *1 n. 1 (W.D. Mich. Mar. 29, 2013); *Hall v. Martin*, No. 1:10-cv-1221, 2012 U.S. Dist. LEXIS 63300, 2012 WL 1579334, at *6 (W.D. Mich. Mar. 29, 2012).

Defendants move for dismissal of Plaintiff's First Amendment and Fourteenth Amendment claims based upon qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232-233. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*.

6

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) ("sincerely held religious beliefs require accommodation by prison officials"). Although, inmates retain First Amendment rights to the free exercise of religion, prison officials may impinge on these constitutional rights if the regulation "is reasonably related to legitimate penological interests." *See Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

1. does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. are there alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors. *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-90) ("a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational"). If the first factor is

7

satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484 (citations omitted). It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest. *Id.*

Applying these factors, the Sixth Circuit has upheld the Constitutionality of rules that require five documented members of a faith before providing group religious services, and has granted prison officials qualified immunity from liability on similar claims.

> This court has consistently permitted prisons to take into account the level of inmate interest in a particular religion when determining whether to hold services. See, e.g., *Spies v. Voinovich*, 173 F.3d 398, 404 (6th Cir.1999) (concluding that a prison's requirement that a minimum of five inmates of a particular faith must be interested in forming a faith group before the prison will provide for religious services has a "valid, rational connection to legitimate government interests in maintaining security and allocating prison resources"); *Hall v. Tyszkiewicz*, 28 F. App'x 493, 495-96 (6th Cir.2002) (holding that an inmate was not deprived of his constitutional rights where the prison did not hold Jewish services due to a lack of interest, and where a rabbi visited the inmate once a month); *Bruton v. McGinnis*, 110 F.3d 63, 1997 WL 139797, at *3 (6th Cir. Mar. 26, 1997) (unpublished table decision) ("Scheduling constraints make it clearly unreasonable to provide separate group services for every religious sect that may arise."). In addition, Colvin points to no restrictions on his ability to practice Judaism privately, read Jewish literature, or correspond with other practitioners of the Jewish faith. *See Spies, 173 F.3d at 404-05* (concluding that an inmate's ability to "meditate privately in the chapel, correspond with fellow believers, and consult individually with a personal minister" demonstrated that he had alternative ways of exercising his religious rights).

*Colvin v. Caruso*, 605 F.3d 282, 291 (6th Cir. 2010). In *Spies*, the Sixth Circuit upheld a similar policy requiring five documented prisoners of a faith before allowing group worship. 175 F.3d at 404-405. In applying the Turner factors, the Sixth Circuit concluded that the rule has a rational connection to "maintaining security and allocating prison resources." *Id*. at 404. *Spies* had alternative means of exercising his religious beliefs such as meditating privately in the chapel and corresponding with fellow believers. *Id*. Accommodation of small prisoner groups strains limited prison resources and prison officials "have an interest in regulating equitably the use of the prison chapel." *Id*. at 405. Finally, *Spies* failed to point to "ready alternatives available to the regulation in question that fully accommodates his rights at de minimis cost to valid penological interests . . ." *Id*.

In the opinion of the undersigned, the MDOC Policy Directive that allows group services for an approved religion, once five prisoners in the same custody level make a request for service, satisfies Constitutional standards under the *Turner* test as stated in *Colvin* and *Spies*. Defendants are entitled to qualified immunity from liability for relying on the policy directive in denying Plaintiff group services at MBP. In addition, Plaintiff has failed to show a question of fact exists as to the number of Jehovah's Witness prisoners at MBP who made a similar request for group religious services. Defendant Prisk attests that as of October 29, 2016, he was only aware of four prisoners who were member of the Jehovah's Witnesses at MBP. In accordance with policy, a Jehovah's Witness group service was unavailable because less than five prisoners requested and were eligible for group service. Defendant Prisk stated that although Plaintiff asserts that ten prisoners were members of the Jehovah Witness faith, he only named eight prisoners in

exhibits to his complaint, and only four of those prisoners declared Jehovah's Witness as their religious preference. (ECF No. 95-4, PageID. 571-572).

Plaintiff asserts a violation of his equal protection rights because the policy directive allowing group services was not equally applied to each religion. Defendants argue that since Plaintiff has asserted a First Amendment claim, he cannot also assert an equal protection claim under the Fourteenth Amendment. Defendants fail to cite relevant authority. *Albright v. Oliver*, 510 U.S. 266 (1994) and *Graham v. Connor*, 490 U.S. 386 (1989) involve dismissal of a generalized substantive due process claim when an explicit source of constitutional protection could establish an identical claim. In this case, Plaintiff is asserting two different claims under the Constitution, a First Amendment freedom of religion claim and a Fourteenth Amendment equal protection claim. These claims involve independent factors and different factual support.

Plaintiff states that Defendants allowed group services for less than five Catholic, Protestant, M.S.T. of A, Buddhist, Al Islam, and Nation of Islam prisoners at MBP. Defendants assert that Plaintiff has failed to show purposeful intent, because Defendants applied the policy directive to Plaintiff's request for group service. Defendants have simply ignored Plaintiff's claim that Defendants have failed to apply the policy equally to each religion. To establish a violation of the Equal Protection Clause, a prison inmate must prove that a discriminatory intent or purpose against a disfavored class or excluded group was a factor in an action taken by prison officials. *See McCleskey v. Kemp*, 481 U.S. 279 (1987); *Heckler v. Mathews*, 465 U.S. 728 (1984); *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252, 265 (1977). Defendants failed to address the merits of Plaintiff's equal protection claim. Therefore, in the opinion of the undersigned, Plaintiff's equal protection claim should proceed.

Plaintiff asserts that Defendants conspired to deny him group services. Plaintiff's conspiracy claim is based upon an allegation that Defendant Napel accepted Defendant Prisk's statement that there were not enough prisoners for Jehovah's Witness group services. It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under 42 U.S.C. § 1983 *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984). "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir. 1989); *Hooks v. Hooks*, 771 F.2d 935, 943-944 (6th Cir. 1985). In order to state a claim of civil conspiracy under § 1983, a plaintiff must show that there was a single plan, that the coconspirators shared in the objective of the conspiracy, violating the plaintiff's constitutional rights, and that an overt act was committed in furtherance of the conspiracy. *Moore*, 890 F.2d at 834; *Hooks*, 771 F.2d at 943-944. In the opinion of the undersigned, Plaintiff fails to allege facts showing the existence of a civil conspiracy under § 1983. Other than conclusory statements alleging conspiracy, Plaintiff has failed to provide any material facts supporting Plaintiff's claim that Defendants acted in concert to deny him his ability to practice his faith.

Accordingly, it is recommended that Defendant's Motion for Summary Judgment (ECF No. 94) be granted in part and denied in part. It is recommended that the motion be granted as to Plaintiff's RLUIPA, First Amendment, and conspiracy claims, and that the motion be denied as to Plaintiff's equal protection claim.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt

of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

        /s/ Timothy P. Greeley  
TIMOTHY P. GREELEY  
UNITED STATES MAGISTRATE JUDGE

Dated:   July 5, 2018